UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Frankfort)

| | | |
|---|---|---|
| WILLIAM EDWARD QUIRE, JR., | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 3: 15-016-DCR |
| | ) | |
| V. | ) | |
| | ) | |
| CAROLYN W. COLVIN, | ) | **MEMORANDUM OPINION** |
| Acting Commissioner of Social Security, | ) | **AND ORDER** |
| | ) | |
| Defendant. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

This matter is pending for consideration of cross-motions for summary judgment filed by Plaintiff William Quire and Defendant Carolyn Colvin, Acting Commissioner of Social Security.   [Record Nos. 8, 9]   Quire argues that the administrative law judge ("ALJ") assigned to his case erred by finding that he is not entitled to a period of disability, disability insurance benefits, and supplemental security income. [Record No. 8]  He requests reversal of the Commissioner's final decision and an award of those benefits.  *Id.*  The Commissioner asserts that the ALJ's decision is supported by substantial evidence and should be affirmed. [Record No. 9]  For the reasons discussed below, the Court will grant the Commissioner's motion and deny the relief requested by Quire.

## I.

On September 16, 2010, Quire filed his first application under Title II of the Social Security Act ("the Act") for a period of disability and disability insurance benefits. [Administrative Transcript "Tr.," p. 51]  On the same date, he also filed an application for

-1-

supplemental security income under Title XVI of the Act. *Id.* In both applications, Quire alleged that his disability began on August 29, 2008. *Id.* Greg Holsclaw, the ALJ assigned to review of that application, denied Quire's claim by a decision dated September 14, 2012. [Tr. 48-61]  In this decision, Holsclaw found that Quire suffered from the following severe impairments: bipolar disorder, depression, and borderline intellectual functioning.  [Tr. 53] However, after thoroughly considering the corresponding mental impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, Holsclaw concluded that none of the impairments met or medically equaled any of the Listings. *Id.* Holsclaw then determined that:

> the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: no more than simple, routine work; no contact with the general public, and no more than occasional interaction with co-workers or supervisors; no independent decision making; use of judgment and no more than occasional, if any, changes in the workplace setting.

[Tr. 56]

On November 9, 2012, Quire again filed for disability, disability insurance benefits, and supplemental security income.  [Tr. 68]  This time, Quire claims that he suffers from back pain and migraines as well as impulse disorder, posttraumatic stress disorder ("PTSD"), mood disorder, and anxiety. *Id.* His claim was denied a second time on March 7, 2013.  [Tr. 78-79]  That denial was affirmed upon reconsideration.  [Tr. 94-106]

Quire, along with his non-attorney representative Laura Palmer and vocational expert ("VE") Martha Goss, appeared for a video administrative hearing before ALJ Don C. Paris on July 22, 2014.  [Tr. 27-47]  On August 26, 2014, ALJ Paris found that Quire was not disabled under sections 216(i) and 223(d) of the Act.  42 U.S.C. §§ 416(i), 423(d).  [Tr. 19]

-2-

Quire appealed that decision to the Social Security Administration's Appeals Council. However, the Appeals Council denied his request for review on December 30, 2014.  [Tr. 2-4]

In the most recent applications, Quire alleges that his disability began on January 30, 2008, at which time he was twenty-nine years old.  [Tr. 18, 68, and 94]  He has not alleged any particular cause that led to these new physical ailments (*i.e.,* back pain and migraines). He has an eleventh grade education and is able to read and write.  [Tr. 223]  Before the onset of Quire's alleged disability, he worked in several factories, both on the assembly line and operating a fork lift.  [Tr. 31-32]

After considering the testimony at the administrative hearing and reviewing the record, the ALJ concluded that Quire had not engaged in substantial gainful activity since the onset of his alleged disability.  [Tr. 12] Further, the ALJ found that under *Drummond v. Comm'r of Soc. Sec.*, 126 F.3d 837 (6th Cir. 1997), he was bound by the findings of ALJ Holsclaw regarding Quire's first disability application.  Accordingly, ALJ Paris found that Quire only suffered from one severe impairment: cervical spine disorder.  [Tr. 12]  The ALJ then concluded that Quire's severe impairment did not meet or medically equal any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix I.  [Tr. 25]  Then, the ALJ determined that Quire retained the residual functional capacity ("RFC") to perform less than a full range of light work, and that

> [he] can occasionally lift/carry 20 pounds, frequently 10 pounds; stand/walk six hours out of an eight-hour workday; sit six hours in an eight-hour workday; no more than frequent overhead lifting; no more than frequent turning head from side to side; no more than frequent simple work activities; no contact with general public and no more than occasional interaction with coworkers

-3-

and supervisor; no independent decision making; use of judgment; and no more than occasional if any, changes in workplace setting.

[Tr. 12-13]

After considering Quire's age, education, work experience, and RFC, the ALJ concluded that a significant number of jobs exist in the national economy that he could perform, including janitor/cleaner, bench assembly, and machine tender.  [Tr. 18]  As a result, the ALJ determined that Quire was not disabled from January 30, 2008 through the date of the decision.  [Tr. 19]

## II.

Under the Social Security Act, a "disability" is defined as "the inability to engage in 'substantial gainful activity,' because of a medically determinable physical or mental impairment of at least one year's expected duration."  *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 539 (6th Cir. 2007) (citing 42 U.S.C. § 423(d)(1)(A)).  A claimant's Social Security disability determination is made by an ALJ in accordance with "a five-step 'sequential evaluation process.'"  *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 642 (6th Cir. 2006) (en banc) (quoting 20 C.F.R. § 404.1520(a)(4)).  If the claimant satisfies the first four steps of the process, the burden shifts to the Commissioner with respect to the fifth step.  *See Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003).

A claimant must first demonstrate that he is not engaged in substantial gainful employment at the time of the disability application.  20 C.F.R. § 404.1520(b).  Second, the claimant must show that he suffers from a severe impairment or combination of impairments.  20 C.F.R. § 404.1520(c).  Third, if the claimant is not engaged in substantial gainful

-4-

employment and has a severe impairment which is expected to last for at least twelve months and which meets or equals a listed impairment, he will be considered disabled without regard to age, education, and work experience.  20 C.F.R. § 404.1520(d).  Fourth, if the claimant has a severe impairment but the Commissioner cannot make a determination of disability based on medical evaluations and current work activity, the Commissioner will then review the claimant's RFC and relevant past work to determine whether he can perform his past work.  If he can, he is not disabled.  20 C.F.R. § 404.1520(f).

Under the fifth step of the analysis, if the claimant's impairments prevent him from doing past work, the Commissioner will consider his RFC, age, education, and past work experience to determine whether he can perform other work.  If he cannot perform other work, the Commissioner will find the claimant disabled.  20 C.F.R. § 404.1520(g).  "The Commissioner has the burden of proof only on 'the fifth step, proving that there is work available in the economy that the claimant can perform.'"  *White v. Comm'r of Soc. Sec.*, 312 F. App'x 779, 785 (6th Cir. 2009) (quoting *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999)).

A court reviewing a denial of Social Security benefits must only determine whether the ALJ's findings are supported by substantial evidence and whether the correct legal standards were applied.  *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007).  Substantial evidence is such relevant evidence as a reasonable mind might accept as sufficient to support the conclusion.  *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007).  The substantial evidence standard presupposes that a zone of choice exists within which decision makers can go either way,

without interference from the court.  *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006).  If supported by substantial evidence, the Commissioner's decision must be affirmed even if the Court would decide the case differently and even if the claimant's position is also supported by substantial evidence.  *Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 876 (6th Cir. 2007); *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007); *Longworth v. Comm'r of Soc. Sec. Admin.*, 402 F.3d 591, 595 (6th Cir. 2005); *Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1233 (6th Cir. 1993).  In other words, the Commissioner's findings are conclusive if they are supported by substantial evidence.  42 U.S.C. § 405(g).

### III.

Quire first contends that the ALJ's RFC determination was not supported by substantial evidence.  [Record No. 8, p. 7]  Additionally, he asserts that the ALJ erred in steps two and three of the analysis by failing to evaluate the severity of his mental impairments.  *Id.* at 7-8.  Finally, Quire argues that the ALJ's decision should be reversed because he failed to assign any weight to The Ridge's evaluation of Quire and neglected to "give a statement of reasons for according no weight to the opinion of [Quire's] treating mental health professionals."  *Id.* at 7-9.

#### A.    Residual Functional Capacity

Residual functional capacity is "an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis."  S.S.R. 96-8p, 1996 WL 374184, at *1 (July 2, 1996).  The RFC determination is a matter reserved for the ALJ.  *See* 20 C.F.R. § 416.946(c).  In making this determination, the ALJ considers the medical evidence, non-medical evidence, and the

claimant's credibility.  *Coldiron v. Comm'r of Soc. Sec.*, 391 F. App'x 435, 443 (6th Cir. 2010).  An ALJ's RFC finding will be upheld where it is supported by substantial evidence. 42 U.S.C. § 405(g).

Quire claims that the ALJ erred in evaluating his RFC by finding that he could: (i) turn his head from side to side frequently, (ii) lift and carry ten pounds frequently and lift and carry twenty pounds occasionally, (iii) sit for six hours out of an eight hour work day, and (iv) stand/walk for six hours out of an eight hour work day.  [Record No. 8, p. 7]  According to Quire, these conclusions are contrary to his testimony during the hearing.  *Id.*  Therefore, he contends that "no evidence supports these findings."  *Id.*  However, the administrative record does contain substantial evidence supporting the ALJ's findings, including the ALJ's assessment of Quire's credibility.

The Court of Appeals for the Sixth Circuit held in *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007), that the task of evaluating the credibility of witnesses, including the credibility of the claimant, belongs to the ALJ, not to the reviewing court. However, the *Rogers* Court also concluded that an ALJ's credibility determinations "must find support in the record."  *Id.*  The regulations do provide the ALJ with the authority to "consider his or her own recorded observations of the individual as part of the overall evaluation of the credibility of the individual's statements."  SSR 96-7p, 1996 WL 374186, at *5.

Because the ALJ's conclusions are supported by the record, this Court defers to each of the ALJ's findings that Quire challenges.  Quire did testify during the July 22, 2014 hearing that he does not drive any longer because he cannot turn his head to look behind him.

[Tr. 29]   However, Dr. Richard Lingreen, of Commonwealth Pain Specialists, PLLC, observed during his initial assessment of Quire on December 11, 2013, that Quire had full range of motion in his neck.  [Tr. 347]

Further, Quire testified during the hearing that, "I'm not able to lift anything."  [Tr. 33]  Quire also told the ALJ that he suffers from numbness and problems gripping with his hands.  [Tr. 39]   But Quire's medical records directly refute his subjective complaints. According to Dr. Maria Pavez, who treated Quire at the Lexington Neuroscience Center, "[Quire] denies significant weakness in arms and legs, gait disturbances . . . or falls."  [Tr. 332]  In his decision, the ALJ relied on Dr. Pavez's objective observations that Quire "was able to move four extremities against gravity and resistance without evidence of significant weakness, muscle group atrophy or fasciculations.  Gait and station: Steady."  [Tr. 14, 331, 332]

In conformity with Dr. Pavez's findings, Dr. Wheeler, who performed a neurosurgery consultation for Quire, observed that Quire's "[m]uscular performance is a 5/5 in the upper and lower extremities."  [Tr. 335]  Dr. Lingreen also observed normal strength in Quire's lower extremities but only 4/5 strength in the upper biceps bilaterally.  [Tr. 347]  Regarding Quire's lifting restrictions, the Court agrees with the Commissioner's assessment that the ALJ's findings are "more restrictive than every medical opinion of record."  [Record No. 9, p. 6]  And while Quire testified that his lifting capability was non-existent, his medical records plainly demonstrate otherwise.

Quire's own testimony supports the ALJ's finding that he can sit for at least six hours in a work day.  When asked how he spends most of his day, Quire responded that from

the time he gets up in the morning until the time he goes to bed at night, he sits in his recliner with his heating pad.  [Tr. 42-44]

Finally, Quire claims that he cannot stand or walk for six hours.  When the ALJ asked Quire at the hearing how long he could walk before he had to stop and rest if he was walking on a level surface, Quire responded, "I don't know, probably a few feet."  [Tr. 38]  The ALJ countered, "[w]ell, you walked further than a few feet.  You walked further than that when I saw you walk in the room."  *Id.*  Quire simply responded, "I don't know how long to measure distance there, sir."  *Id.*

Once more, Quire's self-reporting appears unreliable.  On one of his function reports, Quire estimated that he could walk sixty or seventy feet before needing to stop and rest.  [Tr. 271]  When the ALJ asked Quire how he could stand, the following exchange occurred:

> A:  I can stand for a little bit. It's when I sit down and get up I have to – I have problems standing up straightening my back out, my neck and stuff because it hurts.
>
> Q:  Can you, can you stand for over 30 minutes, 15 minutes?
>
> A:  Probably I'll say somewhere in between 15, 30 minutes.

[Tr. 38]

The ALJ was not bound by this particular piece of Quire's testimony because the record is replete with inconsistent statements by Quire regarding his physical ability.  For example, Quire also testified during the hearing that he could not bend nor stoop.  *Id.*  The Function Report, a form submitted by disability applicants, asks claimants to check from a list "any of the following items your illnesses, injuries, or conditions affect."  [Tr. 249, 271]  On two separate Function Reports submitted by Quire during this most recent disability

determination, Quire indicated that his condition affects his memory, concentration, and ability to complete tasks, understand, talk, follow instructions, and get along with others. *Id.* However, on both forms, Quire did not check the boxes for lifting, squatting, bending, standing, reaching, walking, sitting, kneeling, stair climbing, or using his hands. *Id.*

Inconsistencies also abound in Quire's statements regarding his level of pain. On May 9, 2013, six months after Quire filed this most recent application for benefits, medical records from Dr. Perry Brown's office indicate that Quire was experiencing no pain at all.[1] [Tr. 319] Later, Quire rated his pain to Dr. Lingreen, who provided his pain medications, as a nine out of ten. [Tr. 346] Records provided by Dr. Mark A. Myers of Bluegrass Spine Care show that Quire rated his pain as a ten out of ten. [Tr. 337] Notably, Dr. Pavez observed in one of her reports that Quire's "pain is out of proportion for current findings on exam and recent cervical spine MRI." [Tr. 331]

The ALJ also found Quire's testimony untrustworthy because of Dr. Michael E. Whitten's report. [Tr. 17] On January 3, 2013, Dr. Whitten conducted an evaluation of Quire's mental impairments and subsequently generated a report of his findings. [Tr. 298-302] According to Dr. Whitten,

> Mr. Quire was cooperative and completed all tasks administered. However, results of valid and reliable tests of effort indicate that there is a significant chance that Mr. Quire did not put forth sufficient effort to interpret the assessment results without warning. . . . His scores on such tests fell below what would be expected even from individuals exhibiting major depression, neurological impairment, moderate to severe brain injury, and other clinical diagnoses . . . Mr. Quire's true level of functioning is unknown at this time.

---

[1] The "Progress Note" from Dr. Brown's office contains the following notation: "Pain: (1-10, 1 = none): '1/10.'" [Tr. 319]

[Tr. 298-99]

Based on Dr. Whitten's observations, the ALJ concluded that the claimant's personal evaluation of his symptoms was "not entirely credible."  [Tr. 17]  In light of Quire's many inconsistent statements scattered throughout the record, the ALJ properly questioned his credibility as a witness.  Because substantial evidence exists in the record to support his findings, the ALJ did not err in determining Quire's RFC.

**B.   Step Two and Step Three Analysis**

Quire also contends that the ALJ erred by failing to evaluate the severity of his mental impairments as required by 20 C.F.R. § 404.1520a.  [Record No. 8, p. 7]  Quire complains that "[t]he ALJ barely acknowledged [his] several mental illnesses," and "ignored the evidence that [he] required assistance from his wife to bathe, does NOT routinely help with household chores, [and] is unable to help with his children's needs because of his inability to talk to others."  *Id.* at 8.  Quire is correct that the ALJ did not at all consider his mental impairments in step two or step three of his analysis.  However, the res judicata effect of Quire's first disability determination prohibited the ALJ from reassessing Quire's mental impairments.  Accordingly, the ALJ acted properly by refusing to reweigh issues already adjudicated in a prior proceeding.

"The regulations provide a 'special technique' for evaluating the severity of a mental impairment at steps two and three."  *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 652 (6th Cir. 2009).  This "special technique" is set forth in 20 C.F.R. § 404.1520a, which requires the ALJ to determine whether the claimant has a "medically determinable mental impairment(s)" at step two of the analysis by evaluating his "symptoms, signs, and laboratory findings."  20

-11-

C.F.R. § 404.1520a(b)(1).   If the claimant does have a medically determinable mental impairment, the ALJ proceeds at step three to "rate the degree of functional limitation resulting from the impairment(s)" and determine whether the claimant's impairment meets or medically equals one of the listed impairments in 20 C.F.R. § 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520a(b)(2), (c)(3).   Paragraph B of each mental disorder listed in Appendix 1 requires a claimant to establish that he suffers from at least two of the following: (i) marked restrictions in activities of daily living, (ii) marked difficulties in maintaining social function, (iii) marked difficulties in maintaining concentration, persistence, or pace; or (iv) repeated episodes of decompensation, each of extended duration.   20 C.F.R. § 404, Subpart P, Appendix 1.

In Quire's first disability determination, ALJ Holsclaw concluded at step two of the analysis that Quire suffered from severe bipolar disorder, depression, and borderline intellectual functioning.   [Tr. 53]   Holsclaw then conducted a thorough review of listings 12.04 and 12.05, eventually determining that Quire's mental impairments did not meet or medically equal either of those listings.   [Tr. 54-56]   In reaching that decision, Holsclaw reviewed each of the paragraph B criteria, concluding that Quire only experienced mild difficulty in performing activities of daily living; moderate difficulty in social functioning; moderate difficulty in the areas of concentration, persistence, and pace; and no episodes of decompensation.   [Tr. 54-55]

When Quire again raised his mental impairments in his second disability application, res judicata came into play.   "Res judicata bars the relitigation of the same claim or cause of action…"   *Drummond*, 126 F.3d at 840.   In *Drummond*, the Sixth Circuit held that res

-12-

judicata applies to Social Security claimants seeking to relitigate their cases after a final judgment has been entered. *Id.* at 840-41. Therefore, "absent evidence of an improvement in a claimant's condition, a subsequent ALJ is bound by the findings of the previous ALJ." *Id.* at 842. In the Social Security Administration's Acquiescence Ruling, issued in response to *Drummond*, the rule was explained as follows:

> When adjudicating a subsequent disability claim with an unadjudicated period arising under the same title of the Act as the prior claim, adjudicators must adopt such a finding from the final decision by an ALJ or the Appeals Council on the prior claim in determining whether the claimant is disabled with respect to the unadjudicated period unless there is new and material evidence relating to such a finding . . .

AR 98-4(6) at *3.

Therefore, a subsequent ALJ is bound by every step of the analysis from a prior determination unless "new and material evidence is brought to bear." *Gilley v. Colvin*, No. 13-187-DLB, 2014 WL 2807527, at *2 (E.D. Ky. June 20, 2014). "And, 'when a plaintiff previously has been adjudicated not disabled, she must show that her condition so worsened in comparison to her earlier condition that she was unable to perform substantial gainful activity.'" *Id.* (quoting *Casey*, 987 F.2d at 1232-33).

The record contains very little "new" evidence that was not available to the first ALJ during his review. The only new evidence that established a material change in Quire's condition was the evidence relating to his alleged back injury. Because Quire did not produce any evidence that his mental condition materially worsened or improved after the first disability determination, ALJ Paris was right not to reopen the mental impairment issues.

-13-

The administrative record only contains medical records from four sources evaluating Quire's mental health: (i) Linda Gentry, APRN, (ii) Dr. Perry Brown, (iii) Dr. Michael E. Whitten, and (iv) The Ridge.   Records from Linda Gentry, one of Quire's primary care providers, do indicate that Quire had a history of depression and anxiety.  [Tr. 292]  She also diagnosed Quire with a mood disorder and prescribed him Depakote to manage his symptoms.  *Id.*  However, the table of contents attached to ALJ Holsclaw's original decision shows that he had access to Gentry's records.  [Tr. 65]  "[T]he regulations do not instruct ALJs facing *res judicata* to examine specific medical evidence from the prior case file."  *Erb v. Comm'r of Soc. Sec.*, No. 13-CV-14798, 2015 WL 730130, at *22 (E.D. Mich. Feb. 19, 2015).  Gentry's new records from office visits that occurred after Quire's first disability determination do not record any significant changes in Quire's condition or treatment.  [Tr. 286-290]  His diagnosis and Depakote prescription continue unchanged.  *Id.*

Records from Central Kentucky Behavioral Health, where Quire saw Dr. Perry Brown, were also available to ALJ Holsclaw.  [Tr. 65]  As with Gentry's records, Dr. Brown's records indicate few changes after Quire's first denial of disability benefits.  Prior to the first disability determination, Dr. Brown diagnosed Quire with bipolar disorder.  [Tr. 328]  His records also discuss Quire's impulse control issues and the criminal charges stemming from Quire's sexual abuse of his mother.  [Tr. 327]  The new records from more recent visits show that Dr. Brown continued to talk with Quire and his wife about the effect of the criminal charges on their relationship and Quire's mental health.  [Tr. 319-326]  The records also indicate that Dr. Brown continued to treat Quire for bipolar disorder.  *Id.*

-14-

On October 29, 2012, after the first disability determination, Dr. Brown's records do indicate that Quire reported visual hallucinations for the first time. [Tr. 321] However, at Quire's most recent appointment with Dr. Brown on May 9, 2013, he reported no hallucinations. [Tr. 319] The new records also reveal that Dr. Brown diagnosed Quire with posttraumatic stress disorder (PTSD) after the first disability determination. [Tr. 321] Even though ALJ Paris does not discuss Dr. Brown's records, he does discuss the new PTSD diagnosis, also reached by Dr. Whitten in his report. [Tr. 16] Nevertheless, ALJ Paris does not find that the PTSD diagnosis represents a new and material change in Quire's condition.

The Sixth Circuit has found that a "mere diagnosis of an impairment does not render an individual disabled nor does it reveal anything about the limitations, if any, it imposes upon an individual." *McKenzie v. Comm'r, Soc. Sec.*, 215 F.3d 1327 (Table), 2000 WL 687680, at *5 (6th Cir. May 19, 2000). Neither Dr. Whitten's report nor Dr. Brown's records reveal any new or worsening symptoms that led to the PTSD diagnosis. Therefore, like Dr. Gentry's records, Dr. Brown's records contain no new evidence demonstrating a material change in Quire's mental health.

Finally, the administrative record also contains two new evaluations of Quire's mental health, one performed by Dr. Whitten and one performed at The Ridge, a behavioral health center. [Tr. 298-302, 368-371] As previously discussed, Dr. Whitten found it difficult to evaluate Quire's "true level of functioning" because of his poor effort on Dr. Whitten's tests. [Tr. 298-299] In spite of Quire's attempts to evade accurate evaluation, Dr. Whitten still drew some conclusions about Quire's mental health which reveal little to no change since the first disability determination.

-15-

Consistent with ALJ Holsclaw's finding of mild difficulty in performing activities of daily living, Quire reported to Dr. Whitten that "he is able to manage the fundamental tasks of daily living (grooming and hygiene) without assistance" and "that he is able to do household chores and other routine physical tasks without physical difficulty."  [Tr. 300]  According to Dr. Whitten, "Mr. Quire reported that he does not do any household chores because he becomes too 'irritated.'"  *Id.*  Dr. Whitten's observations are consistent with Quire's self-reporting.  On one of the Function Reports Quire submitted, he reported that he helped his wife "sometimes with house[hold] chores" for an "hour or two [a] couple times a week."  [Tr. 246]  In a later Function Report, Quire admitted he is occasionally too "aggravated" and "overwhelmed" to help.  [Tr. 266, 268]

Dr. Whitten's findings are also consistent with ALJ Holsclaw's RFC determination that ALJ Paris incorporated into his own expanded RFC finding.  Dr. Whitten's report concludes,

> [d]espite impairments the applicant can: understand and follow multi-step and complex directions, sustain attention to perform simple, repetitive, multi-step and complex tasks, adapt to a work environment with considerations made for anxiety, relate appropriately to others in a low stress work environment.

[Tr. 301]  In short, Dr. Whitten's report contains no new, material evidence that would overcome the res judicata effect of Quire's first disability determination.

Quire also alleges that the ALJ failed to describe the contents of The Ridge's report.  [Record No. 8, p. 9]  However, Quire's criticism is refuted by ALJ Paris' direct reference to The Ridge's report in his decision.  ALJ Paris observed, "Mr. Quire was seen at The Ridge on June 30, 2014 for a psychiatric evaluation.  Diagnosis was bipolar disorder, mixed.

-16-

Changes were made to his medication." [Tr. 16] Once more, The Ridge's report reveals little to no change in Quire's mental health. [Tr. 368-371] The examiner estimated Quire's intelligence was average; observed that he was oriented to person, place, time, and purpose; and noted that he exhibited intact memory, appropriate judgment, average ability to abstract, moderate attention, poor insight, and no impulsivity during the interview. [Tr. 370] The diagnosis section of the report lists bipolar disorder, depression, and spinal stenosis. *Id.* The report does mention that Quire reported auditory and visual hallucinations. [Tr. 368] However, Quire also informed the examiner that the hallucinations had been ongoing for two to three years, well before ALJ Holsclaw's first disability decision. Aside from a few changes to Quire's medications, the report reveals no new developments in Quire's mental health.

In light of the entire administrative record, ALJ Paris did not err by refusing to reconsider Quire's mental impairment claims.

### C.   Weight Given to Mental Health Professionals

Quire also argues that ALJ Paris' decision should be reversed because he failed to properly weigh Dr. Perry Brown's opinion and The Ridge's evaluation of his mental health. An ALJ must give a treating physician's opinion controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the claimant's record. 20 C.F.R. § 404.1527(c)(2). If the ALJ determines that the treating source's opinion is not entitled to controlling weight, the regulations require him to give good reasons for this decision. *See* 20 C.F.R. § 404.1527(c). Specifically,

-17-

> [the] ALJ must apply certain factors – namely, the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source—in determining what weight to give the opinion.

*Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004).

An ALJ's failure to meet this "good reasons requirement" is generally not harmless error, even if his other findings are supported by substantial evidence. *Id.* at 544-46. Nevertheless, the Sixth Circuit in *Wilson* explained that even though harmless error is generally not available, "[t]hat is not to say that a violation of the [good reasons requirement] could never constitute harmless error." *Id.* at 547. The *Wilson* Court acknowledged that a reviewing court might find harmless error where the Commissioner adopts findings consistent with the treating source's opinion. *Id.* Then, the claimant would not be entitled to reversal because he could not show that the ALJ's mistake had prejudiced his case on the merits. *See Connor v. United States Civil Serv. Comm'n*, 721 F.2d 1054, 1056 (6th Cir. 1983).

It is uncontroverted that Dr. Perry Brown was one of Quire's treating sources and that the ALJ completely failed to address his records in this decision. Nevertheless, as discussed above, the ALJ was not required to consider evidence weighed by the first ALJ in the earlier disability determination, and all of the records generated after that first disability determination do not show any material changes in Quire's mental health. Quire does not identify any particular part of Dr. Brown's records that might have led to a different result if the ALJ had considered it. And, after a thorough review of Dr. Brown's records, the Court finds no such evidence.

-18-

Arguably, The Ridge might not have been a treating source. The four page evaluation of Quire from June 30, 2014 is the only evidence in the record for The Ridge's treatment of Quire. [Tr. 368-371] Such a short record hardly demonstrates the type of ongoing treatment relationship that the treating source rule is meant to protect. *See* 20 C.F.R. § 404.1527(c)(2). Even though the regulations state that the ALJ will evaluate all medical opinions, including opinions from non-treating sources, the regulations do not require the ALJ to expressly state the weight given to non-treating sources. The good reasons rule does not apply to non-treating sources. Nevertheless, even if The Ridge qualifies as a treating source and the good reasons rule does apply, the ALJ's failure to explicitly assign a weight to the Ridge's opinion is also harmless error. As with Dr. Brown's records, Quire has failed to establish how The Ridge's medical records would have advanced his disability argument if weighed differently by the ALJ.

## IV.

ALJ Paris did not err in his assessment of the claimant's back injuries, and his corresponding RFC determination was supported by substantial evidence. Tellingly, Quire admitted in the Pain and Daily Activities Questionaire he submitted with this latest disability application that, "My disability is mental issues[.]  I do have back pain[,] but my mental problems [are] what keeps [sic] me from working." [Tr. 252] Likewise, the ALJ did not err by refusing to reconsider the claimant's mental health issues, previously adjudicated in 2012. Finally, any error that the ALJ committed in his assessment of records from Dr. Brown and The Ridge was harmless.

Accordingly, it is hereby **ORDERED** as follows:

1. Plaintiff William Quire's Motion for Summary Judgment [Record No. 8] is **DENIED**.

2. Defendant Carolyn Colvin's Motion for Summary Judgment [Record No. 9] is **GRANTED**.

3. The decision of Administrative Law Judge Don Paris will be **AFFIRMED** by separate Judgment entered this date.

This 6th day of November, 2015.

Signed By:

_**Danny C. Reeves**_   DCR

**United States District Judge**

-20-